| | |
|---|---|
| DIMITRIOS KASTIS, | Case No. 1:18-cv-01325-DAD-BAM |
| Plaintiff, | SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT |
| v. | |
| JOE ALVARADO, et al., | (Doc. No. 11) |
| Defendants. | **THIRTY-DAY DEADLINE** |

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Plaintiff Dimitrios Kastis ("Plaintiff") is proceeding *pro se* and *in forma pauperis* in this civil rights action. On February 20, 2019, the district court determined that because this action involved the same or similar parties, claims, and questions of fact or law, it should be consolidated with Plaintiff's later filed actions in Case Nos. 1:18-cv-01378-DAD-BAM, 1:18-cv-01430-DAD-BAM, 1:18-cv-01457-DAD-BAM, and 1:18-cv-01521-DAD-BAM. (Doc. No. 9.)

Following the district court's order, this Court notified Plaintiff that his complaints were subject to screening pursuant to 28 U.S.C. § 1915(e)(2) and, therefore in the interests of efficiency and judicial economy, the Court directed Plaintiff to file single, consolidated, amended complaint in this action. (Doc. No. 10.) Plaintiff's first amended complaint, filed on April 15, 2019, is currently before the Court for screening. (Doc. No. 11.)

1

## I. Screening Requirement and Standard

The Court screens complaints brought by persons proceeding in *pro se* and *in forma pauperis*. 28 U.S.C. § 1915(e)(2). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

In his first amended complaint, Plaintiff names the following defendants: (1) Joe Alvarado, Clovis Police Officer; (2) Clovis Police Department; (3) Fresno County District Attorney's Office; (4) United States Department of Justice; and (5) Department of Homeland Security. Plaintiff asserts violations of his rights under the Fourth, Fifth, Sixth, Eighth and Twelfth Amendments to the United States Constitution.

Defendant Joe Alvarado

Plaintiff generally alleges that Defendant Alvarado "[a]uthored and distributed fake police report, intentionally lied in his police report, committed several counts of perjury in the search

warrant, lied under oath at the plaintiff's preliminary hearing, and intentionally lied under penalty of perjury in the 'warrantless arrest declaration.'" (Doc. No. 11 at 8.) Plaintiff claims that Defendant Alvarado violated Plaintiff's Fourth Amendment rights, deprived him of due process of law, and subjected him to cruel and unusual punishment with 10½ years of pretrial incarceration at the Fresno County Jail.

Plaintiff further alleges that Defendant Alvarado committed the following criminal acts in the process of investigating and arresting him: (1) forged his police report and hid the original from the defense and courts; (2) advised and directed the first responding officer to forge her police report hiding the original from the defense and the courts; (3) lied intentionally six times in his official report; (4) in the 2007 search warrant, he included two unqualified/false statements, nine intentionally false statements, and sixteen deliberate critical omissions; (5) lied under oath eighteen times at Plaintiff's state preliminary hearing and committed a serious "Brady violation" by unlawfully suppressing exculpatory information in his possession; and (6) included four intentional lies in his "warrantless arrest declaration" to the court. (Id. at 13.)

With respect to the purportedly forged police report, Plaintiff alleges the following:

> Defendant Alvarado submitted only a one 8-page police report title "supplemental." It was reviewed and approved by Sgt. Medina. With sentence cut in half it looks like a cut-and-paste job. To this date he has not released his original report which includes, but not limited to CV2 and CV1's birthday, their initial statements to the police, and the statement from their parent/guardian Lola Castellano. The above information were excluded from the "Supplemental" police report. [¶] CPL. Kerr submitted only one 10-page report title "Narrative Continuation" by everybody's evaluation, including Sgt. McFadden, the District Attorney's office and it's senior investigators Cpl. Kerr is the author of the original report. That original report (thanks to Alvarado and the culture of corruption in the Clovis Police) was kept hidden unlawfully from the courts and the defense. [¶] The existence for the unlawfully hidden original police report was confirmed indirectly by Cpl. Kerr herself and directly by Defendant Alvarado in front of a U.S. District Judge. [¶] At the Plaintiff's preliminary hearing under oath and while refreshing her recollection Cpl. Kerr (the first responding officer), stated that she was reading from pages 10, 11, and 12. The problem with that is the fact that her "narrative continuation" police report is only 10-pages long. [¶] At the Franks hearing in front of U.S. District Judge and while on the witness stand Defendant Alvarado stated that the document on the screen (Cpl's Kerr "narrative continuation" report) is "the supplemental to Cpl. Kerr's initial report." [¶] at the same hearing in front of U.S. District Judge Drozd and under cross-examination, Defendant Alvarado stated that in preparations for his testimony he "I also had Corporal Kerr's - - both parents, the initial report and then the supplemental report."

(Doc. No. 11 at 26.)

Plaintiff asserts that Defendant Alvarado, in his rush to obtain a high-profile arrest, violated state and federal criminal laws and Plaintiff's constitutional rights. Plaintiff further asserts that by lying under oath, lying in his police report, lying under penalty of perjury, conducting an unconstitutional search and seizure, covering up exculpatory information and lying to a United States District Judge, Defendant Alvarado violated Plaintiff's Fourth, Twelfth and Eighth Amendment rights.

Plaintiff seeks sanctions against Defendant Alvarado to include training, re-examination of all his criminal cases, damages paid to Plaintiff in the amount of $5 million for 10 ½ years of pretrial incarceration, reassignment, and a written letter of apology.

<u>Defendant Clovis Police Department</u>

Plaintiff generally asserts that Defendant Clovis Police Department's corrupt culture enabled Defendant Alvarado to violate state and federal criminal laws multiple times and to violate Plaintiff's constitutional rights. Plaintiff further asserts that the culture of corruption allowed two of Defendants' officers to forge their police reports and hide them from the defense and courts. Plaintiff further alleges that during the investigation of Plaintiff, Defendant made it possible for unqualified officers to handle critical computer evidence without filing any reports. Additionally, the Defendant's senior computer forensic expert was allowed to remove computer evidence form the evidence locker for 8½ months without justification or filing any report for such action. Plaintiff also alleges that supervisors of the lead detective, first responding officer and senior computer forensic expert provided no training, no oversight and no supervision of the above officers, which directly contributed and enable them to violate state and federal laws and constitutional mandates.

Plaintiff contends that the following instances of alleged criminal misconduct by Clovis Police Officers demonstrates the existence of a systemic culture of corruption: (1) a corporal engaged in lying under oath in a criminal proceeding, deceived a Superior Court judge by forging her police report, and unlawfully hid her original report from the defense and courts in order to obtain a conviction against Plaintiff; (2) the lead detective in the state's case assisted in the cover

up of another police officer's forged report, manufactured a forged police report that he made public, authored a defective and unconstitutional search warrant filled with lies and omissions, committed perjury multiple times in composing the warrantless arrest declaration for the Superior Court, committed Brady violations, lied under oath at Plaintiff's preliminary hearing, provided evidence of his criminal conduct at the Franks hearing in 2018, and lied to a United States District Judge while attempting to defend his 2004 search warrant; (3) a Clovis police sergeant and celebrated senior computer forensic expert lied to an investigator from the District Attorney's Office regarding the existence of two forged police reports to cover up criminal conduct by the lead detective and the first responding officer in the Plaintiff's state case; sergeant violated chain of custody protocols by inappropriate handling of critical computer evidence without filing any reports and tampered with the computer evidence without reporting it; (4) a Clovis police sergeant/supervisor, knowing that he was handling a forged police report (a felony under state and federal criminal laws), signed his name as the reviewing supervisor, giving legitimacy to a forged document and preventing it from security; (5) multiple Clovis police officers examined sensitive computer evidence without filing any reports of their action; and (6) in 2012, two packages titled "57 Counts of Perjury" were sent to the Chief of Clovis police and to the internal affairs unit. The information documented multiple criminal acts by Defendant Alvarado, even though the Chief promised swift action, the agency did nothing to the accused officer.

As sanctions, Plaintiff requests that all criminal cases that resulted in arrest and/or conviction by Clovis Police Officers in the last 50 years be reopened and examined by an independent entity, procedures for review of officer work product, training, payment of damages to Plaintiff in the amount of $50 million after taxes, return of Plaintiff's property after a guilty verdict, and a letter of apology to Plaintiff.

Defendant District Attorney's Office

Plaintiff alleges that the District Attorney's office ignored and suppressed exculpatory evidence, distributed and defended fake police reports, lied to the courts about Brady information in their possession, lied to the courts about the mishandling of computer evidence by Clovis Police Officers, and covered up the existence of fake reports. Plaintiff also alleges that the senior

investigators from the District Attorney's Office assisted in covering up the fake police reports and exculpatory material, accepted and distributed a "perjurious and unconstitutional search warrant," and lied intentionally about dismissal of all state charges against Plaintiff. (Doc. No. 11 at 9.)

Plaintiff further alleges that the District Attorney's Office was involved in Plaintiff's state case from the investigation through the attempted prosecution to the unconditional dismissal of charges against him. Plaintiff claims that defendant violated criminal laws and deprived Plaintiff of his constitutional rights.

Plaintiff asserts that throughout the investigation, representatives from the District Attorney's Office intentionally ignored exculpatory evidence, which with their knowledge and consent was left out of the police reports. Representatives from the District Attorney's Office also reportedly knew that the two original police reports were unlawfully hidden and provided to the courts and defense two forged police reports by the lead detective and first responding officer. During the preliminary hearing in state court, representatives from the District Attorney's Office intentionally misrepresented facts uncovered by the Clovis police investigators, depriving the court of the truth of the allegations against Plaintiff. Representatives from the District Attorney's Office also allegedly lied on the record to the courts about the involvement of multiple Clovis police officers in examining the computer evidence without filing reports. Representatives from the District Attorney's Office also allegedly initiated an investigation using resources from their office to cover up the existence of hidden police reports.

Further, Plaintiff contends that senior investigators from the District Attorney's Office lied to the courts and the defense in their official report about exculpatory information and conducted an investigation to hide the existence of original police reports. Representatives from the District Attorney's Office also allegedly accepted, consented to, and supported an unconstitutional search warrant that included a false affidavit. Plaintiff also contends that in their unconditional dismissal of all state charges, representatives from the District Attorney's Office lied to the court in justifying such decision.

In addition to the above, Plaintiff also alleges as follows:

1) The District Attorney's Office distributed the fake police reports to the defense and the courts, while they had knowledge that such conduct violated state/federal criminal laws as well as the state and federal constitutions.

2) Representatives from the District Attorney's Office had knowledge of the perjurious nature of the search warrant authored by the lead detective in the case. Yet, they distribute it to the defense and the courts and defended such criminally unconstitutional search warrant.

3) The District Attorney's Office knew but did not care that critical Brady material such as the statement from the only parent/guardian of CV2, and the initial statements of CV2 and her sister were intentionally left out from the false reports to protect the accuser's credibility and to increase their chance of getting a conviction.

4) The first responding officer was reading from her hidden original police report during her testimony at the preliminary hearing, yet, representatives from the District Attorney's office deprived the court of the knowledge that they were deceived through such an elaborate scheme of utilizing fake police reports. After all it was to their advantage to perpetuate such criminal conduct. After the unconditional dismissal of all state charges against the Plaintiff, Defendant Alvarado himself provided [illegible] proof of the existence of unlawfully hidden police reports in his testimony at the 2018 Franks hearing.

5) During the preliminary hearing the District Attorney's Office had in their possession (since July of 2007) the MDIC interviews of CV1, CV2, and CV2's sister. Yet, representatives from the District Attorney's Office lied to the judge that they didn't know about such interviews until Alvarado told them about it just before the hearing. In addition to committing a critical Brady violation, the representative from the District Attorney's office intentionally omitted from the courts and the defense the existence of the MDIC interview of CV2's sister which was the most damaging for the government's case.

6) Plaintiff in 2012 sent a "Package" title "57 Counts of Perjury" to the District Attorney's Office. In it Plaintiff documented in great detail 57 counts of perjury by Defendant Alvarado. (Similar packages were sent to the Chief of Clovis police and Clovis police internal affairs unit). Needless to say the agency responsible for prosecuting criminal acts recklessly ignored documented proof of severe criminal conduct by a police officer.

7) In justifying the unconditional dismissal of all state charges against the Plaintiff, the District Attorney's representative lied to the judge about not being able to locate one of the two accusers (CV2) in the case. The defense with its limited resources had frequent contact with CV2 and her family throughout the Plaintiff's incarceration.

8) For several years during the Plaintiff's incarceration representatives from the District Attorney's Office lied to the courts about Clovis police officers examining the computer evidence without filing any reports. Finally, after exhausted attempts through motions by the Plaintiff, the District Attorney's Office acknowledged the fact that there was (at least) one additional Clovis police officer who examine the computer evidence but did not file a report about such involvement in the Plaintiff's case.

(Doc. No. 11 at 34-36.) Plaintiff concludes that Defendant District Attorney's Office violated his Fourth, Eighth and Twelfth Amendment rights.

Defendant United States Department of Justice

Plaintiff alleges that federal prosecutors engaged in the following misconduct: (1) utilized fake/forged police reports; (2) lied to the grand jury as to the origins of the computer evidence against Plaintiff in their possession; (3) failed to question discrepancies in the police reports and statements in the 2007 search warrant; (4) arrested Plaintiff on a no bail warrant with a federal hold and did not arraign him until 8 ½ years later; (5) wasted taxpayer money in defending an unconstitutional search warrant; (6) asked defendant "to lie about 'lying to courts' in order to get a misdemeanor conviction; and (7) subjected Plaintiff to 10 ½ years of incarceration in the Fresno County Jail before their unconditional dismissal of all charges against him. (Doc. No. 11 at 17-18.)

Plaintiff further alleges that he was arrested by ICE/Homeland Security Agents at the conclusion of the State's preliminary hearing on August 6, 2008, under a no bail warrant, and was not arraigned in federal court until April 7, 2016. Plaintiff was placed on a federal hold while the state court charges were adjudicated against him. Plaintiff claims that if not for the federal hold he could have bailed out from the State's incarceration as he had done after his initial arrest in 2007.

Plaintiff asserts that the Department of Justice deprived him of his right to a speedy and public trial. For 8½ years, he was denied his right to be confronted by the witnesses against him and to obtain witnesses in his favor. Plaintiff also asserts that until his arraignment on April 7, 2016, he was denied his right to the assistance of counsel for his defense on the federal charges against him.

Plaintiff further contends that he was deprived of his right to know the circumstances pretrial release, was deprived due process of law for 8 ½ year, and federal prosecutors, with reckless disregard for the truth, took the evidence gathered by the Clovis Police Department on blind faith, including the forged police reports. Plaintiff claims that the evidence led to his

indictment and arrest and the seizure of computer evidence.

As sanctions, Plaintiff seeks special training for federal prosecutors, criminal cases handled by the Fresno Division of the United States Attorney's Office for the last 50 years be reopened and reexamined, damages in the amount of $200 million, and a letter of apology written to Plaintiff.

Department of Homeland Security

Plaintiff alleges that a senior special agent from ICE/Homeland Security violated federal criminal laws and deprived Plaintiff of his constitutional protections through the use of deceptive language, perjured statements, and critical omission that convinced a United States Magistrate Judge to author a federal indictment against Plaintiff.

Plaintiff claims that neither ICE nor any other federal law enforcement agency initiated an internet child sexual exploitation investigation of Plaintiff and that the investigation of Plaintiff was not a joint endeavor involving local and federal law enforcement in conjunction with state and federal prosecutors. Plaintiff contends that the Clovis Police Department investigated Plaintiff on sexual molestation allegations, obtained a fatally defective and unconstitutional search warrant and seized computer evidence that was accessed by three police officers, but only one filed a police report of that task. A Clovis police computer forensic expert conducted an extensive examination of the computer evidence, including communications with numerous federal law enforcement agencies and their data bases, but not with ICE/Fresno. The Clovis police computer forensic expert provided ICE/Fresno with the results of his investigation and mirror images of the content of the computer hard drives. ICE/Fresno and federal prosecutors took the information provided to them by Clovis police, copied them onto their papers, added federal headings and called it their investigation.

Plaintiff also claims that the affidavit in the federal indictment against Plaintiff authored by Senior Special Agent Mike Prado of ICE/Homeland Security contained a number of alleged lies and material omissions. Plaintiff contends that the conduct of Agent Prado in lying several times under penalty of perjury deprived Plaintiff of his right to due process and his protections against cruel and unusual punishment. Plaintiff further claims that the perjured affidavit authored

9

by Agent Prado contributed to violations of Plaintiff's Sixth Amendment rights.

As sanctions, Plaintiff seeks the implementation of procedures for review of agents' work product, the Department of Homeland Security pay damages to Plaintiff in the amount of $200 million dollars, Agent Prado be reassigned to a position where he is not participating in criminal investigations, and the Department of Homeland Security write Plaintiff a letter of apology.

### III. Discussion

Plaintiff's amended complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim for relief. However, as Plaintiff is proceeding pro se, he will be granted leave to amend his complaint to cure the below-identified deficiencies to the extent he can do so in good faith. To assist Plaintiff, the Court provides the pleading and legal standards that appear applicable to his claims.

#### A. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557.

Plaintiff's consolidated complaint is neither short nor plain. It includes generalities and conclusions but does not include sufficient factual matter to state claims for relief that are plausible on the face of the complaint. As a basic matter, the consolidated complaint does not clearly state what happened, when it happened or who was involved. There is no apparent chronology of events regarding Plaintiff's apparent arrest, any alleged state or federal investigations, preparation of police reports or affidavits, state court hearings or federal court hearings. Many of Plaintiff's allegations are conclusions about conduct by various individuals. This is not sufficient. Plaintiff must clearly state what each defendant did or did not do that

resulted in an alleged violation of his rights. If Plaintiff files an amended complaint, it must be a concise statement of his claims, and must include factual allegations identifying what happened, when it happened and who was involved. Fed. R. Civ. P. 8.

### B. Municipal Liability - Clovis Police Department

Although municipalities, such as cities and counties, are amenable to suit, municipal police departments—like the City of Clovis Police Department—are "not generally considered 'persons' within the meaning of Section 1983." United States v. Kama, 394 F.3d 1236, 1240 (9th Cir. 2005); see also Gonzales v. City of Clovis, 2013 WL 394522, at *13 (E.D. Cal. Jan. 30, 2013) (holding that the Clovis Police Department is not a "person" for purposes of Section 1983); Wade v. Fresno Police Dep't, 2010 WL 2353525, at *4 (E.D. Cal. June 9, 2010) (finding the Fresno Police Department to not be a "person" under Section 1983). Therefore, the Clovis Police Department is not a proper defendant.

Even if Plaintiff properly named the City of Clovis as a defendant, he fails to allege sufficient facts to support a claim under section 1983. It is well-established that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (emphasis in original); see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403 (1997). To state a Monell claim, plaintiff "must demonstrate that an 'official policy, custom, or pattern' on the part of [the municipality] was 'the actionable cause of the claimed injury.'" Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting Harper v. City of Los Angeles, 533 F.3d 1010, 1022 (9th Cir. 2008)). A Monell claim can be established in one of three ways. See Thomas v. County of Riverside, 763 F.3d 1167, 1170 (9th Cir. 2014). First, a local government may be held liable when it acts "pursuant to an expressly adopted official policy." Id. (citing Monell, 436 U.S. at 694); Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004). Second, a public entity may be held liable for a "longstanding practice or custom." Thomas, 763 F.3d at 1170. Under certain circumstances, a public entity may have a practice or custom of inaction, where it "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees. Tsao, 698 F.3d at

1143, 1145; see also Connick v. Thompson, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); Flores v. County of Los Angeles, 758 F.3d 1154, 1159 (9th Cir. 2014) (requiring a plaintiff asserting a Monell claim based on a failure to train to allege facts showing that defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights") (internal brackets omitted) (quoting Connick, 563 U.S. at 61). "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" Clouthier v. County of Santa Clara, 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting Gillette v. Delmore, 979 F.2d 1342, 1346–47 (9th Cir. 1992)), overruled on other grounds by Castro v. County of Los Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016).

Plaintiff's conclusory allegations fail to provide a sufficient basis from which to plausibly infer municipal liability. Plaintiff's consolidated complaint fails to identify a specific policy, custom or practice of the City of Clovis that he contends resulted in a violation of his constitutional rights. There is no indication in Plaintiff's complaint that any City of Clovis policy was the moving force behind constitutional violations allegedly committed by its employees. Plaintiff's conclusory allegations are not sufficient, and the City cannot be held liable simply because it employed a person who may have violated Plaintiff's rights. Although Plaintiff generally alleges a "corrupt" environment, this is not sufficient to support liability. At best, Plaintiff has asserted an isolated incident, not frequent and consistent incidents. "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996), holding modified on other grounds by Navarro v. Block, 250 F.3d 729 (9th Cir. 2001). Further, there is no link between a custom and policy of the City and the alleged violations. Plaintiff will be given leave to cure these deficiencies to the extent his is able to do so in good faith.

### C. District Attorney's Office

Plaintiff also names the Fresno County District Attorney's Office as a defendant. There is a conflict in this circuit regarding whether such an entity is properly subject to suit under section 1983. However, a recent court case in this district concluded that such a defendant may properly be subject to suit under section 1983. See Aguaristi v. County of Merced, No. 1:18-cv-01053-DAD-EPG, 2019 WL 330908, *3 (E.D. Cal. Jan. 25, 2019) (denying motion to dismiss District Attorney's Office as improper defendant). Nonetheless, as with a municipality, liability may be imposed only if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell, 436 U.S. at 692

Plaintiff's conclusory allegations against the District Attorney's Office fail to provide a sufficient basis from which to plausibly infer liability. There is nothing in Plaintiff's complaint to suggest that the alleged actions of prosecutors or investigators were the result of any official policy of the District Attorney's Office. There also is no indication of a longstanding practice or custom or that the District Attorney's Office ratified the conduct of any prosecutor or investigator.

Further, the District Attorney's Office may be immune from suit. States and state officers sued in their official capacity under § 1983 may be immune from liability under the statute by virtue of the Eleventh Amendment and the doctrine of sovereign immunity, Howlett v. Rose, 496 U.S. 356, 365 (1990). In California, district attorneys represent the state "when preparing to prosecute and when prosecuting criminal violations of state law" and "when training and developing policy in these areas." See Pitts v. County of Kern, 17 Cal. 4th 340, 362 (1998); see also Weiner v. San Diego Cty., 210 F.3d 1025, 1031 (9th Cir. 2000) (holding that because district attorneys are state officers when exercising their prosecutorial functions, Section 1983 claims against the county failed because the state was the relevant actor, not the county).

### D. Sovereign Immunity - Defendants Department of Justice and Department of Homeland Security

Plaintiff asserts multiple constitutional violations and a deprivation of his civil rights against two federal agencies—the Department of Justice and the Department of Homeland

Security. However, Plaintiff's claims against these federal agencies are barred by the doctrine of sovereign immunity. "The doctrine of sovereign immunity applies to federal agencies and to federal employees acting within their official capacities." Hodge v. Dalton, 107 F.3d 705, 707 (9th Cir. 1997). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." FDIC v. Meyer, 510 U.S. 471, 475 (1993).

To the extent Plaintiff's amended complaint attempts to raise claims against the Department of Justice or the Department of Homeland Security pursuant to section 1983, he may not do so. Claims brought under section 1983 of the Civil Rights Act against federal agencies are barred by sovereign immunity See Jachetta v. United States, 653 F.3d 898, 908 (9th Cir. 2011); Ibrahim v. Dep't of Homeland Sec., 538 F.3d 1250, 1257 (9th Cir. 2008) ("Section 1983 only provides a remedy against persons acting under color of state law").

To the extent Plaintiff's amended complaint can be construed as raising federal constitutional claims pursuant to Bivens v. Six Unknown Agents, 403 U.S. 388 (1971), the United States has not waived its sovereign immunity for claims against a federal agency. See Rivera v. United States, 924 F.2d 948, 951 (9th Cir. 1991) ("The courts lack subject matter jurisdiction to hear constitutional damage claims against the United States because the United States has not waived sovereign immunity with respect to such claims."); Meyer, 510 U.S. at 484-86 (Bivens-type action may not be brought against a federal agency). Under the doctrine of federal sovereign immunity, a Bivens action will not lie against the United States, agencies of the United States, or federal agents in their official capacity. See Meyer, 510 U.S at 484-86; Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996) (concluding plaintiff could not have sued the United States or its officers in their official capacity upon a Bivens claim); Cato v. United States, 70 F.3d 1103, 1110 (9th Cir. 1995) (no Bivens-type claim exists against the United States). Accordingly, Plaintiff may not pursue a federal civil rights claim pursuant to Bivens against the Department of Justice or the Department of Homeland Security.

To the extent Plaintiff's amended complaint can be construed as pursuing claims under the Federal Tort Claims Act ("FTCA"), the only proper defendant for such a claim is the United States. See Kennedy v. United States Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998). And, in

order to state a claim pursuant to the FTCA, Plaintiff must affirmatively allege the timely filing of an administrative claim. See McNeil v. United States, 508 U.S. 106, 113 (1993) (holding FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies); Munns v. Kerry, 782 F.3d 402, 413 (9th Cir. 2015) ("The FTCA requires, as a prerequisite for federal court jurisdiction, that a claimant first provide written notification of the incident giving rise to the injury, accompanied by a claim for money damages to the federal agency responsible for the injury."), cert. denied, 194 L.Ed. 2d 182 (2016); Vacek v. United States Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006) ("We have repeatedly held that the exhaustion requirement is jurisdictional in nature and must be interpreted strictly."). Plaintiff has not named the proper defendant for a FTCA claim nor has he alleged compliance with the FTCA's exhaustion requirements.

**E.      Criminal Prosecution**

Plaintiff claims that defendants and other individuals engaged in criminal conduct. It is unclear whether, by this action, Plaintiff seeks criminal prosecution of defendants or other individuals referenced in the complaint. Plaintiff is advised however that he may not pursue criminal charges or a criminal prosecution against defendants by way of a federal civil rights action. See Engelbrecht v. Kern Cty. Tax Assessor, No. 2:17-cv-01229 KJM AC PS, 2017 WL 2618492, at *2 (E.D. Cal. June 16, 2017) (concluding there is no right of private prosecution in federal court; a private individual cannot criminally prosecute, or cause the government to criminally prosecute, another private individual); Jones v. Virga, No. 2:12-cv-2695 MCE KJN, 2013 WL 1737137, at *2 (E.D. Cal. Apr. 22, 2013) (finding plaintiff's request for the issuance of an arrest warrant or imposition of criminal charges against defendants not appropriate because question of whether to prosecute and what criminal charges to bring are decisions that generally rest in the discretion of the prosecutor).

As for the claim of "perjury," while perjury is a federal crime, see 18 U.S.C. § 1621, there is no private right of action which would enable plaintiff to assert this claim in a civil lawsuit. "[P]rivate rights of action to enforce federal law must be created by Congress," and without a congressional intent to create a private remedy, "a cause of action does not exist and courts may

not create one." Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001); see also Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980) (criminal statutes "provide no basis for civil liability").

### F. Defendant Alvarado

Plaintiff alleges that Defendant Alvarado violated his Fourth, Eighth and Twelfth Amendment rights.

#### 1. Fourth Amendment

##### a. False Arrest/Imprisonment/Malicious Prosecution

For a constitutional claim of false arrest or false imprisonment under 42 U.S.C. § 1983, a plaintiff must show that the defendants did not have probable cause to arrest him. Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998) (citing George v. City of Long Beach, 973 F.2d 706, 710 (9th Cir. 1992)). "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007).

In the context of Section 1983, false imprisonment claims (of which false arrest claims are a subset) encompass allegations of unlawful detention "*without legal process*," as when a person is wrongfully arrested without a warrant. Wallace v. Kato, 549 U.S. 384, 389 (2007) (emphasis in original). False imprisonment ends once the victim "becomes held *pursuant to such process*," as when he is arraigned on charges. Id. (emphasis in original). Detention accompanied by "*wrongful institution* of legal process" is remediable by the tort of malicious prosecution. Id. at 390 (emphasis in original). However, the Fourth Amendment governs a Section 1983 claim of wrongful pretrial detention after the start of legal process where the detainee alleges that the judge's probable cause determination was predicated on falsified evidence. Manuel v. City of Joliet, Ill., ––– U.S. –––, 137 S.Ct. 911, 918-19, 197 L.Ed.2d 312 (2017) (when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements, then, too, a person is confined without constitutionally adequate justification).

For a constitutional claim of malicious prosecution under 42 U.S.C. § 1983, a plaintiff must show that the prosecution "(1) was commenced by or at the direction of the defendant and

was pursued to a legal termination in [the] plaintiff's[ ] favor; (2) was brought without probable cause; ...(3) was initiated with malice," and (4) was brought "for the purpose of denying [the plaintiff] equal protection or another specific constitutional right." Mills v. City of Covina, 921 F.3d 1161, 1169 (9th Cir. 2019) (citing Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004)).

Plaintiff's consolidated complaint does not provide sufficient factual information for the Court to determine whether he states a cognizable claim for false arrest, false imprisonment or malicious prosecution. As previously discussed, the consolidated complaint lacks basic factual allegations surrounding Plaintiff's apparent arrest and the circumstances involved. The Complaint is stated in conclusory terms, rather than factual terms. In other words, there is no indication in Plaintiff's consolidated complaint that his arrest or prosecution in any court was unsupported by probable cause or that his prosecution in any court was initiated with malice.

### b. Judicial Deception

The Fourth Amendment "prohibits a search conducted pursuant to an ill-begotten or otherwise invalid warrant." See Bravo v. City of Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011). A claim for judicial deception must establish that the warrant affidavit contained material misrepresentations or omissions and those misrepresentations or omissions were intentional or reckless. Id. A judicial deception claim can be based on a deliberate falsehood or a reckless disregard of the truth. Id. With respect to reckless disregard, courts have indicated that this involves an inquiry as to whether there is a "'high degree of awareness of [the statements'] probable falsity. An assertion is made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" Wilson v. Russo, 212 F.3d 781, 788 (3d Cir. 2000); Rhabarian v. Cawley, No. 2:10-cv-00767-TLN-KJN, 2013 WL 4049600, at *9 (E.D. Cal. Aug. 7, 2013) (noting that "a merely sloppy investigation culminating in a search warrant – without a showing of deliberation or recklessness – will not support a judicial-deception claim"); see also Ewing v. City of Stockton, 588 F.3d 1218, 1224 (9th Cir. 2009) (stating that a judicial deception claim may not be based on an officer's erroneous assumptions

about the evidence he has received); United States v. Smith, 588 F.2d 737, 739-40 (9th Cir. 1978) (stating that an officer "made certain erroneous assumptions on the basis of the information he received; but this does not amount to the reckless inclusion of false statements in his affidavit").

As currently pled, Plaintiff's allegations are not sufficient to support a claim for judicial deception by Defendant Alvarado. Although Plaintiff asserts various misrepresentations and falsehoods, he has failed to provide sufficient factual information regarding the circumstances of those alleged falsehoods. Plaintiff also makes conclusory assertions regarding the motive and nature of Defendant Alvarado's actions. To support a judicial deception claim, Plaintiff must adequately allege facts that Defendant Alvarado acted deliberately or with reckless disregard for the truth. Plaintiff also must allege facts that Defendant Alvarado entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.

### 2. Eighth Amendment

Plaintiff alleges that Defendant Alvarado subjected him to cruel and unusual punishment during his pretrial incarceration in violation of the Eighth Amendment. Generally, the rights of pretrial detainees are governed by the Fourteenth Amendment to the United States Constitution, not the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 537 n.16 (1979) (noting that "the Due Process Clause rather than the Eighth Amendment" is relied on in considering claims of pretrial detainees because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions").

### 3. Twelfth Amendment

The nature of Plaintiff's claim pursuant to the Twelfth Amendment is not clear. "The Twelfth Amendment to the Constitution of the United States sets out the manner in which the Electors appointed by the States are to cast their votes for President and Vice President." Williams v. North Carolina, No. 3:17-CV-265-MOC-DCK, 2017 WL 4936429, at *3 (W.D.N.C. Oct. 2, 2017), report and recommendation adopted, No. 3:17-CV-00265-MOC-DCK, 2017 WL 4935858 (W.D.N.C. Oct. 31, 2017), aff'd sub nom. Williams v. NC State Bd. of Elections, 719 F. App'x 256 (4th Cir. 2018); see also Rodriguez v. Brown, No. 2:18-cv-001422-CBM-ASx, 2018

WL 6136140, at *3 (C.D. Cal. Sept. 21, 2018) ("The Twelfth Amendment prescribes the method Electors shall vote for the President."); Schultz v. Roberts, No. 17-cv-0097-WQH-KSC, 2017 WL 4541741, at *2 (S.D. Cal. Oct. 10, 2017), aff'd, 740 F. App'x 628 (9th Cir. 2018) ("The Electoral College system is specifically provided for by the Twelfth Amendment.").

Plaintiff's allegations are wholly unrelated to the Electoral College system and they do not involve a constitutional challenge to the use of the Electoral College for election of the President and Vice President.

### G. Injunctive Relief

"[P]laintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir. 2006) (internal quotations and citations omitted). "The key issue is whether the plaintiff is 'likely to suffer future injury. Jones, 444 F.3d at 1126 (quoting Lyons, 461 U.S. at 105). Plaintiff's request for injunctive relief to reopen past unrelated cases does not satisfy the requirements for injunctive relief.

### IV. Conclusion and Order

Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable federal claim for relief. As Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend his complaint to cure the deficiencies to the extent he is able to do so in good faith. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Further, Plaintiff's complaint should not exceed twenty-five (25) pages.

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file a second amended complaint, not to exceed **twenty-five** (25) pages, curing the deficiencies identified by the Court in this order or file a notice of voluntary dismissal; and

3. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

Dated: **July 11, 2019** /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE