UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRIOS KASTIS,<br><br>   Plaintiff,<br><br>   v.<br><br>JOE ALVARADO, et al.,<br><br>   Defendants. | No. 1:18-cv-01325-DAD-BAM<br><br>ORDER GRANTING DEFENDANTS'<br>MOTION TO DISMISS IN PART<br><br>(Doc. No. 27) |

   This matter is before the court on a motion to dismiss plaintiff Dimitrios Kastis' second amended complaint ("SAC") brought on behalf of defendants Joe Alvarado, Matt Basgall, and the City of Clovis ("the City") (collectively, "defendants"). (Doc. No. 27.) A hearing on the motion was held on December 17, 2019. Attorney Suzanne Skolnick appeared telephonically on behalf of plaintiff, and attorney Diana Lee Field appeared telephonically on behalf of defendants. The court has considered the parties' briefs and oral arguments, and for the reasons set forth below, will grant defendants' motion to dismiss in part.

**BACKGROUND**

   In his SAC plaintiff alleges as follows. The Clovis Police Department ("CPD") is an agency of the City. (Doc. No. 19 ("SAC") at ¶ 7.) Defendant Alvarado was at all relevant times a CPD officer who "participated in the arrest, investigation[,] and imprisonment of Plaintiff." (*Id.* at ¶ 8.) Defendant Basgall was at all relevant times the Chief of Police for the City. (*Id.* at ¶ 9.)

1

On June 9, 2007, after receiving an anonymous report from a woman claiming that a neighbor had kissed a nine-year old girl, CPD initiated a child molestation investigation targeting plaintiff.  (*Id.* at ¶ 16.)  On July 5, 2007, a search warrant was sought and obtained from a judge of the Fresno County Superior Court ("the superior court") based on an affidavit prepared by defendant officer Alvarado.  (*Id.* at ¶ 17.)  That search warrant affidavit set forth the following facts:  (1) CPD received a report that plaintiff had invited three minor females into his apartment for candy and Gatorade and then blocked one of them (identified in the SAC as "CV1") in the doorway and quickly kissed her five times; (2) CV1 had previously seen plaintiff purposely grab another girl's (identified in the SAC as "CV2") buttocks while they were playing soccer; (3) CV2 reported that plaintiff had previously invited her to get candy from a bowl in his apartment and allegedly placed his hands over her shoulders and onto her chest; and (4) plaintiff had previously taken a photograph of CV2 while she was wearing her bathing suit and allegedly used that photograph as a screensaver for his computer.  (*Id.* at ¶ 17.)  "[T]he warrant that issued authorized the search of Plaintiff's apartment for various items including:  Computer systems located in the residence; a candy bowl; . . . and a digital camera."  (*Id.* at ¶ 18.)  Defendant Alvarado's affidavit also contained his opinions based on his training and experience as to individuals who produce, trade, distribute, and/or possess child pornography.  (*Id.*)  Based on those opinions, the warrant "broadly listed the following additional property to be searched for and seized," including "[a]ll electronic processing and storage devices, computers[,] and computer systems" and "photos and other records which depict possession/sales of stolen property."  (*Id.*)

On July 5, 2007, CPD executed the search warrant and plaintiff was arrested and charged in the Fresno County Superior Court with annoying or molesting a child in violation of the California Penal Code.  (*Id.* at ¶¶ 15, 20.)  On August 4, 2008, while plaintiff was in local custody, a federal criminal complaint was filed against him in this U.S. District Court, charging him with possession and distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2), (4).  (*Id.* at ¶ 21.)  The federal criminal complaint was based on items seized pursuant to the July 5, 2007 state court issued search warrant.  (*Id.*)  On August 14, 2008, plaintiff was indicted by a federal grand jury on the same charges alleged in the federal complaint.  (*Id.*)

2

On April 6, 2016, almost nine years after his arrest, all of the state charges brought against plaintiff were dismissed. (*Id.* at ¶ 22.) On April 7, 2016, plaintiff appeared in his federal criminal case. (*Id.*) Thereafter, plaintiff moved to suppress the evidence gathered pursuant to the state court issued July 5, 2007 warrant in his federal case. (*Id.* at ¶ 23.) On August 30, 2018, the undersigned granted plaintiff's motion to suppress, finding that the search warrant was issued based on false and misleading statements and omissions made by defendant Alvarado in his affidavit in support of his request for the search warrant, in violation of *Franks v. Delaware*, 438 U.S. 154 (1978). (*Id.* at ¶ 29.) Following the suppression of all evidence seized pursuant to the search warrant tainted by the *Franks* violation, the federal charges against plaintiff were also dismissed on September 7, 2018. (*Id.*)

In his SAC plaintiff asserts the following causes of action:[1] (1) unreasonable search and seizure, judicial deception, and false evidence claims in violation of plaintiff's Fourth, Fifth, and Fourteenth Amendment rights against defendant Alvarado; (2) *Brady* violation claims against defendant Alvarado; (3) a municipal liability claim against the City; and (4) a supervisory liability claim against defendant Basgall. (*Id.* at ¶¶ 41–66.) On November 18, 2019, defendants filed the pending motion to dismiss. (Doc. No. 27.) On December 3, 2019, plaintiff filed his opposition to that motion, and on December 10, 2019, defendants filed their reply thereto. (Doc. Nos. 28, 29.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff must allege "enough facts

---

[1] The manner in which plaintiff has elected to assert his claims in the SAC is confusing. For example, the first cause of action, labeled "Deprivation of Civil Rights – 42 U.S.C. § 1983," appears to include separate claims for "Unreasonable Search & Seizure/Judicial Deception/False Evidence" under the "Fourth, Fifth, and Fourteenth Amendments – Individual Liability" against defendant Alvarado. To the extent that any of plaintiff's causes of action combine several individual claims, he is directed to separately assert each of his claims in any third amended complaint he may elect to file.

to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.[2] *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989), *abrogated on other grounds by DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117 (9th Cir. 2019). However, the court will not assume the truth of legal conclusions cast in the form of factual allegations. *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Federal Rule of Civil Procedure 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 676. A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## ANALYSIS

Defendants advance multiple arguments in support of their motion to dismiss. Each is addressed in turn below.

**A.    The SAC Plausibly Alleges a Judicial Deception Claim Against Defendant Alvarado**

Plaintiff alleges that defendant Alvarado's affidavit in support of the July 5, 2007 state court issued search warrant contained false and misleading statements and omitted material information in violation of his Fourth Amendment rights. Defendant Alvarado argues that plaintiff's allegations fail to state a cognizable judicial deception claim. (Doc. No. 27-1 at 15.)

---

[2] In moving to dismiss, defendants rely on asserted facts not alleged by plaintiff in his SAC. (*See* Doc. No. 27-1 at 7–13.) The court will not consider these facts asserted by defendants in ruling upon the pending motion to dismiss because at this stage of the litigation "[t]he court generally may not consider materials other than facts alleged in the complaint and documents that are made a part of the complaint." *Tosh Berman v. McLaren Auto., Inc. et al*, No. 2:19-cv-05808-AB-JPR, 2019 WL 8219485, at *1 (C.D. Cal. Nov. 26, 2019) (citing *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996)).

4

To state a § 1983 claim asserting a *Franks* violation, a plaintiff must "allege facts supporting an allegation of fraud or misrepresentation by the affiant officer in obtaining the warrant from the magistrate." *Freeman v. City of Fresno*, No. 1:05-cv-00328-OWW-SMS, 2005 WL 1378946, at *9 (E.D. Cal. June 7, 2005). "Some courts refer to a *Franks* violation as a 'judicial deception' claim." *Dunnigan v. Santa Monica Police Chief*, No. 2:18-cv-01024 GW-AS, 2018 WL 5936850, at *5 n.5 (C.D. Cal. Aug. 14, 2018) (citing *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) ("A seizure conducted pursuant to a warrant obtained by judicial deception violates the Fourth Amendment.")). When asserting a claim for judicial deception in violation of one's Fourth Amendment rights, "a § 1983 plaintiff must show that the investigator made deliberately false statements or recklessly disregarded the truth in the affidavit and that the falsifications were material to the finding of probable cause." *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (internal quotation marks and citation omitted). "To determine the materiality of omitted facts, [courts] consider whether the affidavit, once corrected and supplemented, establishes probable cause." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1084 (9th Cir. 2011) (internal quotation marks and citation omitted). A plaintiff must allege, and ultimately establish, that "without the dishonestly included or omitted information, the magistrate would not have issued the warrant. Put another way, the plaintiff must establish that the remaining information in the affidavit is insufficient to establish probable cause." *Hervey v. Estes*, 65 F.3d 784, 789 (9th Cir. 1995), *as amended on denial of reh'g* (Dec. 5, 1995).

Here, defendant Alvarado argues that the SAC does not plausibly allege a judicial deception claim against him because plaintiff "failed to provide sufficient factual information regarding the circumstances of [the] alleged falsehoods." (Doc. No. 27-1 at 16.) Defendant Alvarado therefore contends that the SAC does not plausibly allege that he acted deliberately or

/////
/////
/////
/////
/////

with reckless disregard for the truth in swearing to the truth of his supporting affidavit.[3] (*Id.*) The court is not persuaded by defendant Alvarado's argument in this regard. The SAC alleges that defendant Alvarado included the following false or misleading statements in his search warrant affidavit: (1) that CV1 walked into plaintiff's apartment when, in fact, CV1 reported to law enforcement that she had "tripped into the apartment"; (2) that CV1's mother advised law enforcement that CV1 had told her that plaintiff had cornered her in his apartment's doorway and kissed her on the mouth five times when, in fact, this statement was relayed to law enforcement by CV1 herself; (3) that CV2 stated that plaintiff had taken several photos of her in a bathing suit using his camera when, in fact, during her interview with law enforcement, CV2 had only reported a single photo taken of her in a bathing suit by plaintiff; and (4) that CV2 stated that plaintiff "always touches her butt when they go swimming in the apartment complex pool" when, in fact, CV2 only reported that plaintiff had touched her buttocks on one occasion while swimming. (*Id.*) With respect to material omissions, plaintiff alleges that defendant Alvarado did not include in his affidavit: (1) that a law enforcement officer felt that CV1 was being deceptive about how she entered plaintiff's apartment; (2) that CV2 stated that, on one occasion, she had jumped on plaintiff's back; (3) that neither CV1 nor her parents made a complaint to the police; (4) the "inconsistencies . . . regarding the date of the alleged kissing incident," which ranged from months to a year; and (5) that CV1 had told law enforcement that "CV2 and her sister had thrown dirt and strawberries at Plaintiff's door." (SAC at ¶¶ 25, 26.) Plaintiff also alleges that "Alvarado knew he had developed no evidence indicating [that] Plaintiff possessed lewd or lascivious photographs of children or child pornography," but nevertheless "cut and pasted several paragraphs from a prior child pornography search warrant." (*Id.* at ¶ 27.)

---

[3] Defendants also contend that plaintiff is relying on the finding of a *Franks* violation and the granting of his motion to suppress evidence by the undersigned in his federal criminal prosecution to establish his claims in this civil action. (Doc. No. 29 at 6.) Defendants argue that the finding of a *Franks* violation and the granting of that motion to suppress evidence "provides neither collateral estoppel nor res judicata of the issue of probable cause" in this civil action. (*Id.*) However, even a perfunctory review of the SAC reveals that plaintiff is not relying on the undersigned's pretrial ruling in his federal criminal case in this civil action. Indeed, besides referring to it once in the SAC as part of the factual background (*see* SAC at ¶ 29), plaintiff does not refer to or in any way rely on that ruling at all.

6

According to plaintiff, had these deficiencies in the supporting affidavit been corrected, the reviewing state court judge would not have been able to find probable cause to issue the search warrant for plaintiff's apartment. (*Id.* at ¶¶ 24, 31.) Finally, plaintiff alleges that "Alvarado [acted] [] intentionally and/or with reckless disregard for the truth because [he] was aware of what the witnesses actually said," given that "at the time he drafted his search warrant affidavit, Alvarado had [CPD's] reports [of the witnesses' statements]," "he was present for the [] interviews of both CV1 and CV2 and took his own notes of what was said during those interviews," and he "also had recordings of those interviews." (*Id.* at ¶ 25.)

The court finds that these allegations are sufficient to survive the pending motion to dismiss. Plaintiff has alleged facts—not merely conclusions—to show that defendant Alvarado made deliberately false statements or recklessly disregarded the truth in his search warrant affidavit and that those misrepresentations and omissions were material to the reviewing state court judge's probable cause determination. Plaintiff's allegations specify which of the statements in defendant Alvarado's affidavit were false and why plaintiff believes those statements to be false. Plaintiff also specifies the information that defendant Alvarado omitted from his affidavit and why those omissions were material to the probable cause determination. Assuming the truth of these factual allegations, plaintiff has plausibly alleged that defendant Alvarado either acted deliberately or in reckless disregard for the truth in presenting his affidavit to the issuing state court judge. Plaintiff has therefore alleged sufficient facts upon which to plausibly assert a § 1983 judicial deception claim. *See, e.g. Wheeler v. Broggi,* No. C19-1410-JCC, 2020 WL 2111249, at *4 (W.D. Wash. May 4, 2020) (allegations of specific misstatements and omissions from a search warrant affidavit that were material to the probable cause determination were sufficient to survive a motion to dismiss); *Sigal v. County of Los Angeles,* No. 2:17-CV-04851-RGK-AGR, 2017 WL 10560532, at * 8 (C.D. Cal. Aug. 28, 2017) (based upon allegations of "specific omissions and misrepresentations" and deliberate misrepresentation of those facts, the plaintiff was found to have stated a cognizable judicial deception claim); *Shavers v. Murphy*, No. 16-cv-05421-DMR, 2017 WL 2335541, at *2–3 (N.D. Cal. May 30, 2017) (finding the plaintiff stated a cognizable claim judicial deception claim where she alleged that her

"right to be free from unlawful searches and seizures was violated by Murphy when he signed an arrest warrant, knowing the DA's office declined to press charges against Plaintiff, which resulted in Plaintiff's false arrest"); *cf. Keates v. Koile*, 883 F.3d 1228, 1241 (9th Cir. 2018) (finding that a complaint did not plausibly allege a judicial deception claim because "a single factual allegation supporting this claim" because it did not "provide a basis for concluding that . . . inclusion of th[at] statement . . . was a deliberate falsehood"); *Riveira v. Dresch*, No. 2:18-cv-01211-JCC, 2019 WL 3238569, at *5 (W.D. Wash. July 18, 2019) ("Even if Defendant's affidavit contained inaccuracies . . . Plaintiffs have not raised factual allegations that plausibly establish that Defendant knowingly or recklessly made false statements[.]") (internal citation omitted).

Accordingly, the court will deny defendant Alvarado's motion to dismiss plaintiff's judicial deception claim.

**B.    The SAC Does Not Plausibly Allege a *Brady* Claim Against Defendant Alvarado**

Next, defendant Alvarado contends in very general fashion that the SAC fails to allege a cognizable *Brady* claim against him. (Doc. No. 27-1 at 18-20.) In his opposition, plaintiff argues that although all charges brought against him in both the state and federal courts were ultimately dismissed, he nonetheless suffered substantial harm as a result of the alleged *Brady* violation, based upon defendant Alvarado's alleged failure to timely disclose what the witnesses actually said in their interviews (as opposed to what he falsely reported they said in his search warrant affidavit) by being incarcerated as a pretrial detainee for over a decade before the true facts were revealed. (Doc. No. 28 at 14-16.) At the hearing on the pending motion, the court raised with the parties the question of whether, as a matter of law, one who ultimately was not convicted of a crime could present a cognizable claim under § 1983 based upon a *Brady* violation that allegedly took place during the course of the prosecution and permitted the parties to file supplemental briefing addressing that issue. In his supplemental brief, plaintiff argues that the decision in *Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014), stands for the proposition that no underlying criminal conviction is required "to bring a § 1983 *Brady*-type claim." (Doc. No. 31 at 5.) In their supplemental brief defendants argue that no *Brady* claim was at issue in *Tatum* and that the Ninth Circuit in an unpublished opinion has joined the other circuit courts to address the issue and

8

concluded that no § 1983 claim for violation of *Brady* can be stated absent a related criminal conviction. (Doc. No. 33 at 2-3.)

In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *see also Comstock v. Humphries*, 786 F.3d 701, 708 (9th Cir. 2015). "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (internal quotation marks and citation omitted). "[A] § 1983 plaintiff must show that police officers acted with deliberate indifference to or reckless disregard for an accused's rights or for the truth in withholding evidence from prosecutors." *Tennison v. City & Cty. of San Francisco*, 570 F.3d 1078, 1088 (9th Cir. 2009); *see also Mellen v. Winn*, 900 F.3d 1085, 1096 (9th Cir. 2018).

Every circuit court to have addressed this issue has concluded that a criminal conviction stemming from a *Brady* violation is a prerequisite for the stating of a cognizable § 1983 claim based upon that violation. *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007) ("Becker never proceeded to trial, and she cannot therefore rest her § 1983 claims on a Brady violation."); *Jean v. Collins*, 221 F.3d 656, 663 (4th Cir. 2000) ("A *Brady* violation that resulted in the overturning of the § 1983 plaintiff's conviction is a necessary . . . condition for § 1983 liability on the part of the police. It is a necessary condition because the *Brady* violation establishes the requisite threshold of constitutional injury (a conviction resulting in loss of liberty) below which no § 1983 action can lie."); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999) (rejecting § 1983 claim based on alleged Brady violation because "[r]egardless of any misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial"); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) ("Plaintiff . . . was never

9

convicted and, therefore, did not suffer the effects of an unfair trial. As such, the facts of this case do not implicate the protections of *Brady*."); *McKune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) (rejecting § 1983 Brady claim "[b]ecause the underlying criminal proceeding terminated in appellant's favor, [so] he has not been injured by the act of wrongful suppression of exculpatory evidence").

The Ninth Circuit has not addressed in a published opinion[4] the issue of whether a plaintiff can maintain a § 1983 claim based on alleged *Brady* violations where there is no underlying conviction.[5] Nonetheless, several district courts within the Ninth Circuit have found that such a claim is not cognizable absent a criminal conviction. *See, e.g.*, *Deeter-Larsen v. Whatcom Humane Soc'y*, No. 2:18-cv-00300-RAJ, 2019 WL 2524939, at *6 (W.D. Wash. June 19, 2019) ("[T]here were no convictions, and a *Brady* violation cannot occur where there is no conviction."); *McLaine v. Clark Cty., Nevada*, No. 2:14-cv-00288-JAD-GWF, 2017 WL 3974995, at *3 (D. Nev. Sept. 8, 2017) (acknowledging that the Ninth Circuit has not addressed the issue, and dismissing the plaintiff's § 1983 Brady claim because in order to maintain such a claim "there has to be a conviction");*Wagner v. Finneran*, No. 5:07-cv-01557-AG-RNB, 2008

---

[4] As defendants point out, the Ninth Circuit has held in an unpublished opinion that a § 1983 claim does not lie absent a criminal conviction connected thereto. *See Puccetti v. Spencer*, 476 Fed. Appx. 658 (9th Cir. 2011); *But see Smith v. Almada*, 640 F.3d 931, 946 and n.1 (9th Cir. 2011) (Nelson, J. dissenting) (noting that the majority found it unnecessary to rule on the issue in that case leaving the issue unresolved in the Ninth Circuit).

[5] Plaintiff's reliance on the court's decision in *Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014) is misplaced. In that case, the Ninth Circuit held that "[w]here . . . investigating officers, acting with deliberate indifference or reckless disregard for a suspect's right to freedom from unjustified loss of liberty, fail to disclose potentially dispositive exculpatory evidence to the prosecutors, leading to the lengthy detention of an innocent man, they violate the due process guarantees of the Fourteenth Amendment." 768 F.3d at 816. No *Brady* claim brought under § 1983 was before the court in *Tatum*. Rather, there the court only acknowledged "a due process claim for unjustified loss of liberty due to the investigative officers' failure to disclose potentially dispositive exculpatory evidence to the prosecutors during a suspect's pretrial detention." *Merritt v. Arizona*, No. CV-17-04540-PHX-DGC, 2019 WL 6050237, at *21 (D. Ariz. Nov. 15, 2019). "*Tatum* did not decide whether *Brady* extends to a situation where the suspect never goes to trial." *Id*. Accordingly, while *Tatum* does not provide an avenue for plaintiff to assert a *Brady* claim, it does recognize a due process claim brought under the Fourteenth Amendment based on loss of liberty due to investigative officers' failure to disclose exculpatory evidence. Plaintiff will therefore be granted leave to amend assert such a claim, as opposed to a *Brady* claim, if he so desires.

WL 2156723, at *4 (C.D. Cal. May 22, 2008) (Recognizing that the Ninth Circuit has not addressed the issue but concluding that "[w]ith respect to § 1983 liability on the part of law enforcement officers for alleged Brady violations, it is well established that, in order to state a claim, a wrongful conviction must have followed the alleged Brady violation.").

The undersigned finds the rationale employed by these circuit and district courts to be persuasive, particularly because it is in line with the Supreme Court's reasoning that "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281. Accordingly, because plaintiff was never convicted of the crimes with which he was charged in either state or federal court, the undersigned concludes that he cannot maintain a § 1983 claim based on an alleged *Brady* violation. Therefore, defendant Alvarado's motion to dismiss plaintiff's *Brady* violation claim will be dismissed without leave to amend as to that specific claim. *See Wagner*, 2008 WL 2156723, at *4 (holding that the plaintiff, who was never convicted of a crime, could not maintain a § 1983 *Brady* claim, "[n]or c[ould] this deficiency be cured by amendment").

**C.     The SAC Does Not Plausibly Allege a Municipal Liability Claim Against the City**

The City argues that plaintiff's municipal liability claims brought against it on a theory of *Monell* liability, should be dismissed because plaintiff has not adequately alleged facts in his complaint establishing an actionable policy, custom, or practice. (Doc. No. 27-1 at 20–27); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

It is well-established that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Crowe v. County of San Diego*, 608 F.3d 406, 445 (9th Cir. 2010) (quoting *Monell*, 436 U.S. at 692); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). To state a *Monell* claim against the County, plaintiff "must demonstrate that an 'official policy, custom, or pattern' on the part of [the County] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)); *see also Mendiola-Martinez v. Arpaio*, 836 F.3d

11

1239, 1247 (9th Cir. 2016) (to establish municipal liability under § 1983 a plaintiff must show a direct causal link between the municipal policy or custom and the alleged constitutional violation). A *Monell* claim can be established in one of three ways. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014). First, a local government may be held liable when it acts "pursuant to an expressly adopted policy." *Id.* (citing *Monell*, 436 U.S. at 694); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Second, a public entity may be held liable for a "longstanding practice or custom." *Thomas*, 763 F.3d at 1170. Such circumstances may arise when, for instance, the public entity "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees. *Tsao*, 698 F.3d at 1143 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (requiring a plaintiff asserting a claim based on a failure to train to allege facts showing that defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights") (internal brackets omitted) (quoting *Connick*, 563 U.S. at 61). "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. County of Santa Clara*, 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016) (en banc).

Here, in his SAC, plaintiff asserts claims for municipal liability based on the City: (1) instituting policies that "allowed constitutional violations"; (2) failing to adequately train its officers on what information to include in a search warrant application; and (3) ratifying the misconduct of defendant Alvarado. (SAC at ¶ 55.) Plaintiff alleges that the City's policies include the "deliberately indifferent training and supervision of its law enforcement officers in preparing search warrant affidavits and carrying out the same . . .[,] includ[ing] the express and/or

1 tacit encouragement of preparing and executing search warrants that lack probable cause, the
2 ratification of police misconduct[,] and the failure to conduct adequate investigations of police
3 misconduct." (SAC at ¶ 35.) Plaintiff alleges that the "City fails to adequately train and
4 supervise police officers in the investigation of crimes and the appropriate laws and procedures
5 related to preparing search warrants," and that the City trained its officers to include boilerplate
6 language "that w[as] simply cut and pasted into the search warrant affidavits regardless of
7 whether the officer has developed any evidence warranting such language in the affidavit." (*Id.* at
8 ¶ 36.) The SAC also alleges that the City and defendant Basgall "ratified, condoned, and tacitly
9 approved of Alvarado['s] . . . conduct in that Alvarado was not reprimanded or punished for his
10 misconduct . . . [and was instead] rewarded with a promotion." (*Id.* at ¶ 37.) Plaintiff contends
11 that his case "does not represent an isolated occurrence" and points the court to the search warrant
12 at issue in a different case involving CPD and the City, *Garber v. City of Clovis*, 1:09-cv-00242-
13 AWI-DLB (E.D. Cal.) According to plaintiff, in *Garber*, CPD executed a search warrant in
14 February of 2007—a few months before the search warrant at issue in this case was executed—
15 that also authorized the seizure of computers from the suspect's property on the basis that child
16 pornography would be found there, without the officer-affiant ever having stated that any of the
17 images she viewed during the course of her investigation were of minors engaged in sexually
18 explicit conduct. (SAC at ¶ 38.) Based on the allegations made by the plaintiffs in *Garber*,
19 plaintiff argues that the City "was on actual or constructive notice" that CPD's training program
20 was deficient with respect to the policies and procedures for applying for search warrants. (*Id.* at
21 ¶ 39.)

22 The court finds that the allegations of the SAC, however, do not sufficiently allege a claim
23 for municipal liability against the City. First, as the City correctly point out, plaintiff's reliance
24 on *Garber* is misplaced because the complaint in that action was not filed until February 6,
25 2009—well after the events giving rise to this action. (Doc. No. 27-1 at 23; *see also* Doc. No. 27-
26 /////
27 /////
28 /////

13

$2^6$ at Ex. 1).)  Second, even if the complaint in *Garber* was relevant to this case, "[a] single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom."  *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).  Third, with plaintiff's reliance on *Garber* misplaced, the remaining allegations of the SAC in support of the *Monell* claim are conclusory and without any detailed factual support.  For instance, plaintiff's claim that the "City fails to adequately train and supervise police officers in the investigation of crimes and the appropriate laws and procedures related to preparing search warrants" is not supported by *any* factual allegations.  The rest of plaintiff's allegations are similarly deficient.  The Ninth Circuit has made clear that *Monell* claims "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).  Here, the SAC fails to plausibly allege a municipal liability claim against the City as it contains *no* factual allegations to plausibly suggest a policy, custom, or practice.  As one district court has observed, a complaint alleging a *Monell* claim must "pair

---

[6]  Defendants request that the court take judicial notice of the docket in the *Garber* case, the stipulated dismissal and order from that action, and plaintiff's detention order from his federal criminal case before this court.  (*See* Doc. No. 27-2 at Exs. 1–3.)  Ordinarily, the court considers only the complaint and attached documents in deciding a motion to dismiss; however, the court may also take judicial notice of matters of public record without converting the motion into a motion for summary judgment.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  Pursuant to the Federal Rule of Evidence 201(b), a court may "judicially notice a fact that is not subject to reasonable dispute because it:  (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Public records are properly the subject of judicial notice because the contents of such documents contain facts that are not subject to reasonable dispute, and the facts therein "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Id.*; *see also Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  Defendants request that judicial notice be taken of exhibits, all of which are of public record.  Defendants' request for judicial notice is therefore granted.

general averments of a policy or custom with particular examples." *Ulloa v. Prince George's County*, No. 8:15-cv-00257-DKC, 2015 WL 7878956, at *6 (D. Md. Dec. 4, 2015).

Accordingly, the court will grant the City's motion to dismiss plaintiff's municipal liability claims but will also grant plaintiff leave to amend.[7]

### D. The SAC Does Not Plausibly Allege a Supervisory Liability Claim Against Defendant Basgall

Defendant Basgall moves to dismiss plaintiff's fourth cause of action, seeking to hold him liable for defendant Alvarado's alleged misconduct on a theory of supervisory liability based on his position as Chief of Police. (Doc. No. 27-1 at 7–8.)

"An official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation." *Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018) (internal quotation marks omitted); *see also Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991) (noting that whether a supervisor in his individual capacity is liable for a failure to supervise "hinges upon his participation in the deprivation of constitutional rights"). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (internal quotation marks omitted). If a subordinate has committed a constitutional violation, the liability of a supervisor "depends upon whether he set in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known,

---

[7] In opposition to the pending motion, plaintiff argued that at the 2017 *Franks* evidentiary hearing in his federal criminal case, defendant Alvarado testified that he was trained to prepare search warrants in the manner that he did in this case. (Doc. No. 28 at 20.) Had it been included in the SAC, this allegation would lend support for a claim against the City. This allegation, however, was advanced by plaintiff for the first time in his opposition to the pending motion, and "[a] court may not . . . look beyond the complaint and consider new facts alleged in a plaintiff's opposition to a defendant's motion to dismiss." *Monzon v. S. Wine & Spirits of California*, 834 F. Supp. 2d 934, 941 (N.D. Cal. 2011); *see also Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir.2003) (citing *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998)).

15

1    would cause others to inflict the constitutional injury." *Blankenhorn v. City of Orange*, 485 F.3d
2    463, 485 (9th Cir. 2007) (internal quotation marks omitted).

3    Here, plaintiff's SAC sets forth no factual allegations that, if proven, would demonstrate
4    that defendant Basgall took any action with respect to the alleged deprivations of plaintiff's
5    constitutional rights.  The allegations supporting this claim are not based on defendant Basgall's
6    conduct but are instead premised solely on his role as a supervisor.  Specifically, plaintiff alleges
7    that, in April or May of 2014, he informed Basgall of the falsities in defendant Alvarado's search
8    warrant affidavit.  (SAC at ¶ 30.)  On May 27, 2014, defendant Basgall acknowledged receipt of
9    plaintiff's communication "and informed him that the matter was assigned to a supervisor for
10   investigation and that Plaintiff would be notified of the results of the investigation when
11   completed."  (*Id.*)  Plaintiff contends that defendant Basgall therefore "knew or should have
12   known of Alvarado's misconduct, [such as] including false statement in his search warrant
13   affidavit and omitting exculpatory information from the affidavit based on [p]laintiff's letter to
14   Basgall in 2014."  (SAC at ¶ 23.)

15   However, allegations that a supervisor "knew or should have known" of misconduct are
16   conclusory, and therefore not entitled to the presumption of truth.  *See Sullivan v. Biter*, No. 1:15-
17   cv-00243-DAD-SAB, 2017 WL 1540256, at *1 (E.D. Cal. Apr. 28, 2017); *see also Lacey v.*
18   *Maricopa Cty.*, 693 F.3d 896, 916 (9th Cir. 2012) ("For an official to be liable for another actor's
19   depriving a third party of his constitutional rights, that official must have at least the same level of
20   intent as would be required if [he] were directly to deprive the third party of his constitutional
21   rights.")  Left unsaid in the SAC is what defendant Basgall actually did (or failed to do) that
22   resulted in harm to plaintiff.  Plaintiff alleges that "Basgall had a duty to investigate Plaintiff's
23   allegations regarding Alvarado's conduct" because plaintiff sent Basgall a letter in 2014 detailing
24   Alvarado's conduct in connection with plaintiff's his criminal cases.  (SAC at ¶ 62.)  Plaintiff
25   alleges that, despite Basgall acknowledging receipt of his correspondence and informing plaintiff
26   that an investigation would be carried out, "no [investigation] results have ever been
27   communicated to Plaintiff."  (*Id.*)  These allegations, however, do not plausibly allege that
28   Basgall was personally involved in depriving plaintiff of his constitutional rights, nor do they

establish a sufficient causal connection between Basgall's conduct and the alleged violations of plaintiff's rights. Moreover, plaintiff alleges that his rights were violated in 2007, when defendant Alvarado allegedly deceived the state court judge who reviewed the supporting affidavit and thereby obtained a search warrant unsupported by probable cause. Plaintiff's letter to defendant Basgall, however, was not sent until 2014, years after the issuance and execution of the search warrant for plaintiff's apartment. Thus, the SAC does not plausibly allege a cognizable supervisory liability claim against defendant Basgall based on his receipt of plaintiff's 2014 communication.

Accordingly, plaintiff's claim against defendant Basgall based on a theory of supervisory liability will also be dismissed with leave to amend.

### E. Qualified Immunity Does Not Apply[8]

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, ___ U.S. ___, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) and *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, it must determine whether: (1) the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) the right at issue was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *accord Pearson v. Callahan*, 555 U.S. 223, 236–42 (2009) (holding that courts need not analyze the two prongs of the analysis announced in *Saucier* in any particular order).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable

---

[8] Defendants' motion to dismiss contains a single paragraph under the heading "QUALIFIED IMMUNITY." (See Doc. No. 27-1 at 20.) That paragraph, however, merely provides a brief description of qualified immunity, but did not explain how that doctrine applies here or supported dismissal of this action. Plaintiff pointed out this deficiency in his opposition. Thereafter, defendants argued in their reply that defendant Alvarado was entitled to qualified immunity and, presumably, dismissal of the FAC on that ground. (See Doc. No. 29 at 10–11.) The court will consider this argument even though it was not properly advanced in the motion to dismiss.

official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  This inquiry must be undertaken in light of the specific context of the particular case, rather than as a broad general proposition.  *Mullenix*, 136 S. Ct. at 308.

> The *Franks* standard, although developed in the criminal context, "also defines the scope of qualified immunity in civil rights actions." *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991); *see also Forster v. County of Santa Barbara*, 896 F.2d 1146, 1148 n. 3 (9th Cir. 1990).  Thus, "[i]f an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, . . . he cannot be said to have acted in an objectively reasonable manner," and the shield of qualified immunity is lost. *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir.1985) . . ..

*Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Liston v. County of Riverside*, 120 F.3d 965, 972 (9th Cir. 1997) ("*Franks* standard, although developed in a criminal context, also defines the scope of qualified immunity in civil rights actions."); *Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir. 1995); *Al-Kidd v. Gonzales*, No. 1:05-cv-00093-EJL-MHW, 2012 WL 4470776, at *6 (D. Idaho Sept. 27, 2012) ("[O]nce it is determined that a *Franks* violation occurred, qualified immunity does not apply.").  Indeed, defendants agree that "the[] qualified immunity principles mirror the principles that govern a Fourth Amendment Franks . . . claim."  (Doc. No. 29 at 11.)

Here, the court has already found that the SAC plausibly alleges a § 1983 claim for judicial deception.  Accordingly, defendants' motion to dismiss plaintiff's judicial deception claim based on the application of qualified immunity will be denied.

**F.    Defendants' Remaining Arguments**

Defendants raise a few additional arguments in the pending motion.  First, they argue that plaintiff cannot allege a malicious prosecution claim (Doc. No. 27-1 at 16), but as plaintiff points out in his opposition, he is not asserting a claim for malicious prosecution (Doc. No. 28 at 12–13).  Accordingly, defendant's motion to dismiss plaintiff's malicious prosecution claim is denied as moot.  Next, defendants contend that plaintiff cannot assert a cause of action under the Fifth Amendment of the U.S. Constitution because he has not asserted a claim against any federal

18

actor. (Doc. No. 27-1 at 17–18.) Plaintiff agrees and confirms that he is not asserting any claims against a federal actor under the Fifth Amendment. (Doc. No. 28 at 13.) Accordingly, defendants' motion to dismiss plaintiff's Fifth Amendment claims is granted without leave to amend.[9]

## CONCLUSION

For the reasons set forth above,

1. Defendants' motion to dismiss (Doc. No. 27) is granted in part and denied in part as follows:

   a. Plaintiff's *Brady* violation claim against defendant Alvarado is dismissed without leave to amend;

      i. Plaintiff, however, is granted leave to amend to assert a Fourteenth Amendment due process claim pursuant to the Ninth Circuit's decision in *Tatum*, as discussed in footnote 5 above;

   b. Plaintiff's municipal liability claim against the City is dismissed with leave to amend;

   c. Plaintiff's supervisorial liability claims against defendant Basgall are dismissed with leave to amend;

   d. Plaintiff's Fifth Amendment due process claims are dismissed without leave to amend.

   e. Defendants' motion to dismiss is denied in all other respects; and

/////
/////
/////
/////

---

[9] While plaintiff agrees that he cannot assert a Fifth Amendment due process claim against any of the defendants in this action, he "does not . . . waive his right to assert 5th Amendment due process violations should federal actors later become Defendants." (Doc. No. 28 at 13.) The court makes no determination as to plaintiff's reservation of rights but notes that, at this juncture, dismissal of plaintiff's Fifth Amendment claim without leave to amend is warranted given the lack of any federal defendants being named in this action.

19

2. Any amended complaint plaintiff may elect to file shall be filed within twenty-one (21) days from service of this order.

IT IS SO ORDERED.

Dated: **May 13, 2020**              *Dale A. Drozd*
                                      UNITED STATES DISTRICT JUDGE